No. 21-11700-H

_____

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

_____

DONNA CHISESI, AS INDEPENDENT ADMINISTRATRIX OF THE ESTATE  OF
JONATHAN VICTOR, DECEASED

Appellee,

v.

MATTHEW HUNADY and HUEY HOSS MACK

Appellants.

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA SOUTHERN DIVISION
Case No. 1:19-CV-00221-C

_____

### PETITION FOR RE-HEARING EN BANC

_____

Jack Samuel Tenenbaum
Attorney for Plaintiff/Appellee
Northwestern Pritzker School of Law
Bluhm Legal Clinic
375 E. Chicago Avenue
Chicago, Illinois 60611
(312) 503-4808 T
s-tenenbaum@law.northwestern.edu


*ORAL ARGUMENT REQUESTED*

## PETITION FOR RE-HEARING EN BANC STATEMENT & ATTORNEY CERTIFICATION

Pursuant to the Federal Rules of Appellate Procedure Rule 35(b)(1), and the United States Court of Appeals for the Eleventh Circuit Rule 35-5(c):

1.    I express a belief, based on a reasoned and studied professional judgment, that the panel decision is contrary to the following decisions of the precedents of this circuit: *Lewis v. City of West Palm Beach*, 561 F.3d 1288, 1293 (11th Cir. 2009) and *English v. City of Gainesville*, 75 F.4th 1151, 1157 (11th Cir. 2023); *Smith v. Brenoettsy*, 158 F.3d 908, 913 (5th Cir. 1998); *Camilo-Robles v. Hoyos*, 151 F.3d 1, 15 (1st Cir. 1998); and precedents of other Circuits: *Gregory v. City of Louisville*, 444 F.3d 725, 753-54 (6th Cir. 2006); *Helphenstine v. Lewis County*, 60 F.4th 305, 326 (6th Cir. 2023); *Shadrick v. Hopkins Cnty*, 805 F.2d 724 (6th Cir. 2015); and *Allen v. Muskogee*, 119 F.3d 837 (10th Cir. 1997), and that consideration by the full court is necessary to secure and maintain uniformity of decisions in this Court.

2.    I express a belief, based on a reasoned and studied professional judgment, that this appeal involves one or more questions of exceptional importance:  Qualified Immunity for law enforcement officers and Qualified Immunity for the senior law enforcement officer charged with setting policy and training of all other officers who admittedly failed to provide any training related to handling mentally ill or injured suspects, de-escalation tactics, and barricaded subjects.

/s/ Jack Samuel Tenenbaum
J. Samuel Tenenbaum
ATTORNEY OF RECORD FOR:
Plaintiff/Appellee Donna Chisesi, as Independent Administratrix of the Estate of Jonathan Victor, Deceased

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel for Appellee Donna Chisesi, as Independent Administratrix of the Estate of Jonathan Victor, Deceased, hereby respectfully submits this Certificate of Interested Persons, and list the following persons/entities as parties in the above-captioned proceeding:

| | |
|---|---|
| Cassady, William E.: | Magistrate Judge, Southern District of Alabama |
| Chisesi, Donna: | Plaintiff/Appellee |
| Chisesi, Jordan: | Heir of the Estate of Jonathan Victor, Deceased |
| Clements, Fred L.: | Counsel for Defendants/Appellants |
| Hunady, Matthew: | Defendant/Appellant |
| Mack, Huey Hoss: | Defendant/Appellant |
| McNeill, J. Randall: | Counsel for Defendants/Appellants |
| Northwestern University Prizker School of Law Bluhm Legal Clinic: | Counsel for Plaintiff/Appellee |
| Tenenbaum, J. Samuel: | Counsel for Plaintiff/Appellee |
| Webb McNeill Walker PC: | Law firm for Defendants/Appellants |
| Victor III, Adrian J. | Heir of the Estate of Jonathan Victor, Deceased |
| Victor, Justin | Heir of the Estate of Jonathan Victor, Deceased |

ii

**CORPORATE DISCLOSURE STATEMENT**

Plaintiff/Appellee Donna Chisesi, as Independent Administratrix of the Estate of Jonathan Victor, Deceased, submits the following statement of her corporate interests and affiliations for use of the Honorable Judges of this Court:

Plaintiff/Appellee has no corporations or entities with interest in this litigation to report.

## STATEMENT REGARDING ORAL ARGUMENT

Plaintiff/Appellee Plaintiff/Appellee Donna Chisesi, as Independent Administratrix of the

Estate of Jonathan Victor, Deceased, respectfully requests oral argument in this matter.

## TABLE OF CONTENTS

Petition for Re-Hearing En Banc Statement & Attorney Certification……………………  i

Certificate of Interested Parties………………………………………………………………  ii

Corporate Disclosure Statement…………………………………………………………....  iii

Statement Regarding Oral Argument…………………………………………………………  iv

Table of Contents……………………………………………………………………………..  v

Table of Authorities Cited……………………………………………………………………  vi

I. Statement of Issues Asserted that Merit En Banc Consideration……………………..  1

   A.  The Panel's decision conflicts with this Court's precedent……………………..  1

   B.  The Panel's decision conflicts with other Circuits' precedent……………………  1

   C.  Qualified Immunity should be abrogated or abolished…………………………..  1

II. Statement of Course of Proceedings & Disposition of the Case……………………..  1

III. Statement of Facts………………………………………………………………………...  2

IV. Argument……………………………………………………………………………………  3

   A.  Standard of Review………………………………………………………………..  3

   B.  The Panel's Holding conflicts with *Lewis*…………………………………………  5

   C.  Factual Issues Exist which precludes Summary Judgment for Mack…………..  7

      1.  The District Court recognized disputed issues of material fact……………  9

      2.  The Panel's decision conflicts with other Circuits…………………………  7

   D.  The legal framework for Qualified Immunity should be re-evaluated or abolished…………………………………………………………………………  8

Conclusion…………………………………………………………………………………  12

Certificate of Compliance with Appellate Rules…………………………………………...  13

Certificate of Service…………………………………………………………………………  14

Opinion, *Chisesi v. Hunaday, et al.*, Case No. 21-1170 (11th Cir. Apr. 16, 2024)………  Ex. 1

## TABLE OF AUTHORITIES CITED
<u>Cases</u>
*(in alphabetical order)*

| **Case** | **Page** |
|---|---|
| *Access Now, Inc. v. Southwest Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004). | 7 |
| *Allen v. Muskogee*, 119 F.3d 837 (10th Cir. 1997) | 1 |
| *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). | 4 |
| *Board. of Cnty Com'rs of Bryan Cnts v. Brown*, 520 U.S. 397 (1997) | 4 |
| *Camilo-Robles v. Hoyos*, 151 F.3d 1 (1st Cir. 1998) | 1 |
| *City of Canton v. Harris*, 489 U.S. 378, 390 (1988) | 5 |
| *Crawford-El v. Britton*, 523 U.S. 574, 611 (1998) | 11 |
| *Durruthy v. Pastor*, 351 F.3d 1080 (11th Cir. 2003) | 4 |
| *English v. City of Gainesville*, 75 F.4th 1151 (11th Cir. 2023) | 1 |
| *Fikes v. Abernathy*, 793 F. App'x 913 (11th Cir. 2019) | 4 |
| *Gregory v. City of Louisville*, 444 F.3d 725 (6th Cir. 2006) | 1 |
| *Helphenstine v. Lewis County*, 60 F.4th 305 (6th Cir. 2023) | 1 |
| *Kisela v. Hughes*, 548 U.S. 100, 118 (2018) | 11 |
| *Lewis v. City of West Palm Beach*, 561 F.3d 1288 (11th Cir. 2009) | 1 |
| *Osborne v. City of Marietta*, 380 Fed. Appx. 836, 837 (11th Cir. 2010). | 7 |
| *Pierson v. Ray*, 386 U.S. 547 (1967) | 10 |
| *Shadrick v. Hopkins Cnty*, 805 F.2d 724 (6th Cir. 2015) | 1 |
| *Smith v. Brenoettsy*, 158 F.3d 908 (5th Cir. 1998) | 1 |
| *Taylor v. Riojas*, 592 U.S. 7, 8 (2020). | 9 |
| *Tennessee v. Garner*, 471 U.S. 1, (1985) | 5 |
| *Valdez v. McDonald*, 66 F.4th 796, 818-19 (10th Cir. 2023) | 7 |

*Whatley v. CNA Ins. Cos.*, 189 F.3d 1310 (11th Cir. 1999)   4

*Wyatt v. Cole*, 504 U.S. 158, 170 (1992)   11

*Zadeh v. Robinson*, 928 F.3d 457, 479-80 (5th Cir. 2019)   11

*Ziglar v. Abbasi*, 582 U.S. 120, 159 (2017)   11

## I.    STATEMENT OF ISSUES THAT MERIT EN BANC CONSIDERATION.

### A.  The Panel's decision conflicts with this Court's precedent.

The Panel's decision conflicts with this Court's holding in *Lewis v. City of West Palm Beach*, 561 F.3d 1288, 1293 (11th Cir. 2009) ["*Lewis*"], which found firearms pose a "flagrant risk of constitutional violations." The Panel's decision conflicts with this Court's precedent that it does not have jurisdiction over the denial of summary judgment for qualified immunity grounded in disputes of genuine issues of material fact: *English v. City of Gainesville*, 75 F.4th 1151, 1157 (11th Cir. 2023).

### B.  The Panel's decision conflicts with other Circuits' precedents.

The Panel's decision conflicts with other Circuits' precedent: *Smith v. Brenoettsy*, 158 F.3d 908, 913 (5th Cir. 1998); *Camilo-Robles v. Hoyos*, 151 F.3d 1, 15 (1st Cir. 1998); and *Gregory v. City of Louisville*, 444 F.3d 725, 753-54 (6th Cir. 2006); *Helphenstine v. Lewis County*, 60 F.4th 305, 326 (6th Cir. 2023); *Shadrick v. Hopkins Cnty*, 805 F.2d 724 (6th Cir. 2015); and *Allen v. Muskogee*, 119 F.3d 837 (10th Cir. 1997).

### C.  Qualified Immunity should be abrogated or abolished.

There is no uniform framework across Circuits as a result of confusing or lack of guidance from the Supreme Court. Circuits, even panels within Circuits, reach different conclusions on similar or identical facts. Accordingly, the qualified immunity doctrine should be abridged or abolished. Qualified immunity is no longer tenable given the amalgamation of holdings and opinions (or, lack thereof) requiring the abolition of qualified immunity

## II.    STATEMENT OF COURSE OF PROCEEDINGS & DISPOSITION OF CASE.

On May 7, 2019, the Appellee/Plaintiff, Donna Chisesi, as Independent Administratrix of the Estate of Jonathan Victor, Deceased ("Plaintiff") filed suit against Defendant, Baldwin County

Deputy Sheriff Matthew Hunady ("Hunady") and Sheriff Huey Hoss Mack ("Mack," collectively, with Hunady, "Defendants") for the wrongful death of her son Jonathan Victor ("Jonathan"). (Doc. 1.)

On January 4, 2021, Defendants filed a Motion for Summary Judgment asserting qualified immunity. (Doc. 30.) On April 19, 2021, the District Court denied summary judgment for qualified immunity as to Counts I, II, and IV. (Doc. 40, p. 21.)

On May 18, 2021, Defendants filed their interlocutory appeal. (Doc. 41.) On November 18, 2022, Circuit Judges Lagoa, Brasher, and District Judge Boulee (the "Panel") heard oral arguments. On August 16, 2023, the Panel requested additional briefing in response to *English v. City of Gainesville*, 75 F.4th 1151 (11th Cir. 2023).

On April 16, 2024, the Panel issued its Opinion dismissing Hunady's appeal for lack of jurisdiction and reversing the District Court's denial of qualified immunity with respect to Mack. *Chisesi v. Hunady, et al.*, Case No. 21-1170 (11th Cir. Apr. 16, 2024).

## III.    STATEMENT OF FACTS.

Plaintiff's Petition is limited to the Panel's finding related to Mack. Plaintiff incorporates by reference her Statement of Facts in Appellee's Brief and provides a limited Statement of Facts. *See* Appellee's Br. at § 2, pgs. 4-19 ["SOF"].

Jonathan was involved in a single vehicle accident and landed in a ditch off Interstate 10. When first responders arrived on scene, they noted Jonathan seemed "spaced out," was talking to himself, and exhibiting an "altered mental state." (*Id.* at ¶ 4.) First responders retreated and called for law enforcement, despite the fact that no one saw a weapon. (*Id.* at ¶¶ 7-9.) Dispatchers even asked first responders to de-escalate the situation, "we don't want the police arriving and drawing guns [with] him being secured with a head injury and grabbing his baby blanket." (*Id.* at ¶¶ 9.)

Hunady self-reported to the scene armed with multiple weapons, immediately grabbing a rifle, without ever confirming if Jonathan had a weapon or his mental state. (*Id.* at ¶¶ 10-12;-14-18.) Hunady and other officers took a position behind a fire truck and aimed at Jonathan. (*Id.* at ¶¶ 19-20.) Eventually, Jonathan exited his vehicle, following Hunady's commands, and began traversing the terrain. (*Id.* at ¶¶ 27-39.) Jonathan did not have a weapon, but Hunady yelled at him several times to drop it (without telling him what to drop) and without warning he would shoot, he shot Jonathan 4 times, killing him. (*Id.* at ¶¶ 42-49.)

BCSO has a crisis intervention team, but no one contacted them. (*Id.* at ¶ 54.) At the time of the shooting, BCSO lacked officer training in several fundamental areas. As testified to by Mack, BCSO had no crisis intervention training, had no (and still has no) training on de-escalation scenarios, and had no (and still has no) specific training for situations involving mental distress or suicide. (*Id.* at ¶ 55.) Hunady admitted he had no specific training on de-escalation. (*Id.* at ¶ 55.) But, Hunady has extensive weapons training and is a certified sniper who won top gun award in 2015. (*Id.* at ¶ 58.)

Plaintiff's expert, William Katsaris, has over 30 years of police experience, nearly 50 years training officers, and has given his opinion in hundreds of cases. (*Id.* at ¶ 62.) Katsaris determined that Jonathan was not suspected of a crime, had just told people to leave him alone, and was likely emotionally destabilized which rendered this a barricaded subject or suicide by cop situation. (*Id.* at ¶ 67.) Katsaris noted Hunady had time and police resources on his side and could have used that time to gather information, critical when dealing with a potential firearm. (*Id.*) Katsaris testified what proper training would have involved. (*Id.* at ¶ 68.) According to Katsaris, failure to train an officer on these points would constitute "reckless disregard to a known risk of harm." (*Id.* at ¶¶ 7-

9.) Defendant's expert, Healy, admitted that shooting Jonathan was supposed to be a last resort and was both uncertified and uncertain about the use of tasers. (*Id.* at ¶ 66.)

## IV.   ARGUMENT.

### A.  Standard of Review.

Review of the District Court's denial of summary judgment is *de novo*. *Whatley v. CNA Ins. Cos.*, 189 F.3d 1310, 1313 (11th Cir. 1999). A court should find "all reasonable inferences in favor of the party *opposing* summary judgment" and the facts should be viewed in the light most favorable to the nonmoving party. *Id.* (emphasis added); *Tolan v. Cotton*, 572 U.S. 650, 657 (2014). The Eleventh Circuit has explicitly stated: "We resolve all issues of material facts in favor of the plaintiff, and then determine the legal question of whether the defendant is entitled to qualified immunity under that version of the facts." *Fikes v. Abernathy*, 793 F. App'x 913, 917 (11th Cir. 2019) (quoting *Durruthy v. Pastor*, 351 F.3d 1080, 1084 (11th Cir. 2003)) (internal quotes excluded). The Supreme Court has observed, "[o]ur qualified-immunity cases illustrate the importance of drawing inferences in favor of the nonmovant[.]" *Id.*; *see also* Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Under § 1983, Mack can be held liable as Hunady's superior "where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *Canton*, 489 U.S. 378 at 389. A single violation of federal rights accompanied by a failure to train its employees on how to properly handle a recurring situation presenting an obvious potential for such violation is sufficient to prove deliberate indifference. *Bd. of Cnty Com'rs of Bryan Cnts v. Brown*, 520 U.S. 397, 409-10 (1997). Here, Plaintiffs presented factual evidence that: (1) Hunady violated Jonathan's constitutional rights; (2) Mack did not provide training on mentally ill subjects, barricaded subjects, or de-escalation techniques; (3) between 2015-2018,

nearly 1,000 officer involved shootings and 29% of officer-involved shootings with similar circumstances; and (4) Plaintiff's expert report. Doc. 40 at pg. 17-18. The very purpose of this training is to avoid violating constitutional rights. Instead of sending in its crisis intervention team (or even training officers on how to de-escalate, let alone call-in crisis intervention), law enforcement sent in a SWAT officer. *See* SOF at ¶¶ 55; 58. As further detailed below, the District Court held this created a factual dispute. In resolving the factual dispute in favor of the Plaintiff, under applicable standards, it was a constitutional violation that established deliberate indifference. The Panel looked at this same evidence and held that under applicable law "[w]hile certainly important topics—engaging with mentally ill individuals, handling barricaded subjects, and performing de-escalation techniques—the failure to train officers in those areas does not 'carry a high probability for constitutional violations in the manner intended by the 'so obvious' notice that would open the door to [supervisor] liability." For the following reasons, this is simply incorrect.

### B.  The Panel's Holding conflicts with *Lewis*.

The use of deadly firearms is glaringly dangerous. Notably, the Panel relied upon this Court's holding in *Lewis* in reaching its determination. The Panel ignored the holding in *Lewis*: "Despite the questionable use of the hobble in this particular situation, *hobbles do not have the same potential flagrant risk of constitutional violations as the use of deadly firearms*." *Lewis v. City of West Palm Beach*, 561 F.3d 1288, 1293 (11th Cir. 2009). Thus, the Panel's decision is in direct conflict with this Court's decision in *Lewis*.

"For example, city policymakers know to a moral certainty that their police officers will be required to arrest fleeing felons. The city has armed its officers with firearms, in part to allow them to accomplish this task. Thus, the need to train officers in the constitutional limitations on the use of deadly force can be said to be 'so obvious,' that failure to do so could be properly

characterized as 'deliberate indifference.'" *City of Canton v. Harris*, 489 U.S. 378, 390 n. 1 (quotes original) (citing *Tennessee v. Garner*, 471 U.S. 1, (1985)); *see also Helphenstine v. Lewis Cnty*, 60 F.4th 305, 326 (6th Cir. 2023). "[A]bsent specific training on the use of deadly force, armed police officers would not be equipped with the tools necessary to make the relevant legal conclusion." *Helphenstine v. Lewis Cnty*, 60 F.4th 305, 326 (6th Cir. 2023). Here, Hunady was equipped with a deadly weapon but not the proper training or tools necessary to properly use that deadly weapon. *See id.* Mack was responsible for providing that training—which he did not. *See id.*

As recently as May 25, 2022, the President issued an Executive Order, which specifically includes providing training and resources for dealing with individuals in the midst of mental health crises.[1] In 2023, in response to the Executive Order, the Departments of Justice and Health & Human Services published guidance for emergency responders.[2] Given the prevalence of officer involved shootings with crisis subjects, the report calls for mandatory training on dealing with individuals in crisis and de-escalation techniques, among other recommendations. *Id.*

Here, the Panel held "[w]hile certainly important topics—engaging with mentally ill individuals, handling barricaded subjects, and performing de-escalation techniques—the failure to train officers in those areas does not 'carry a high probability for constitutional violations in the manner intended by the 'so obvious' notice that would open the door to [supervisor] liability." *Chisesi v. Hunaday, et al.*, Case No. 21-1170 (11th Cir. Apr. 16, 2024) (internal quotes in original) (citing *Lewis v. City of West Palm Beach*, 561 F.3d 1288, 1293 (11th Cir. 2009)). Given this matter

---

[1] The White House, Executive Order on Advancing Effective, Accountable Policing and Criminal Justice Practices to Enhance Public Trust and Public Safety, *available at* https://www.whitehouse.gov/briefing-room/presidential-actions/2022/05/25/executive-order-on-advancing-effective-accountable-policing-and-criminal-justice-practices-to-enhance-public-trust-and-public-safety/ (last visited May 6, 2024).
[2] DOJ & DHHS, *Guidance for Emergency Responses to People with Behavioral or Other Disabilities*, *available at:* www.justice.gov/d9/2023-05/Sec.%2014%28a%29%20-%20DOJ%20and%20HHS%20Guidance%20on%20Emergency%20Responses%20to%20Individuals%20with%20Behavioral%20Health%20or%20Other%20Disabilities_FINAL.pdf (last visited May 6, 2024).

involves the use of a deadly weapon, which this Court has previously recognized as a flagrant risk for constitutional violations, and the prevalence of law enforcement interaction with mentally ill subjects and need for de-escalation techniques, it is absurd to conclude that the failure to train on these issues was not "so obvious" that it would lead to constitutional violations. *See id.*; *see also* DOJ/DHHS Report at pg. 2. This holding is further undermined by the District Court's careful examination of the evidence presented and conclusion that genuine questions of material fact exist as to whether Mack's failure to train constituted deliberate indifference. *See* Doc. 40 pgs. 15-20. The Panel's holding directly conflicts with this Court's precedent and should be re-heard.

### C. Factual issues exist which preclude Summary Judgment for Mack.

#### 1. The District Court recognized disputed issues of material fact.

The District Court properly held there were disputed issues of material fact. *See* Doc. 40 at pg. 18. [3] Other Circuits have held a failure to train is at least partially a factual question. *Valdez v. McDonald*, 66 F.4th 796, 818-19 (10th Cir. 2023); *see also Helphenstine v. Lewis County*, 60 F.4th 305, 326 (6th Cir. 2023); *see also Shadrick v. Hopkins Cnty*, 805 F.2d 724 (6th Cir. 2015); *Allen v. Muskogee*, 119 F.3d 837 (10th Cir. 1997). Thus, the Panel should have affirmed the District Court.

#### 2. The Panel's decision conflicts with other Circuits.

Multiple other Circuits have held they either: do not have jurisdiction or affirmed denial of summary judgment on qualified immunity where it is grounded in disputed issues of material fact. Finally, multiple Circuits have found that summary judgment on qualified immunity grounds was inappropriate given the genuine issues of material fact.

---

[3] The Panel (unlike Mack) acknowledges that a single incident may give rise to supervisor liability. Opinion at pg. X. The Panel, however, concludes the circumstances of this case do not rise to that level even though Mack makes no such argument. *Id.* This argument should have been considered waived by Mack. *See* Appellant's Br. At 46-49; *see Osborne v. City of Marietta*, 380 Fed. Appx. 836, 837 (11th Cir. 2010). Mack did not raise it in the District Court and, even if his Brief could be construed as raising it on appeal, it is still waived. *Access Now, Inc. v. Southwest Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004).

First, this Court has held it does not have jurisdiction over this type of appeal. *See English v. City of Gainesville*, 75 F.4th 1151, 1157 (11th Cir. 2023). In fact, the Panel specifically requested supplemental briefing on this very issue. *See id.*

Second, most Circuits, including the Eleventh, have held they do not have jurisdiction over appeals of the denial of summary judgment when based on factual issues: *Smith v. Brenoettsy*, 158 F.3d 908, 913 (5th Cir. 1998).

Third, other Circuits, while finding jurisdiction, have affirmed denial of summary judgment where grounded on disputed issues of material fact: *Camilo-Robles v. Hoyos*, 151 F.3d 1, 15 (1st Cir. 1998); and *Gregory v. City of Louisville*, 444 F.3d 725, 753-54 (6th Cir. 2006).

Fourth, multiple Circuits have reversed summary judgment where there were disputed issues of material fact as to failure to train: *Helphenstine v. Lewis County*, 60 F.4th 305, 326 (6th Cir. 2023); *Shadrick v. Hopkins Cnty*, 805 F.2d 724 (6th Cir. 2015); and *Allen v. Muskogee*, 119 F.3d 837 (10th Cir. 1997).

### D.  The legal framework of Qualified Immunity should be re-evaluated or abolished.

There is no cohesive legal framework for evaluating and applying qualified immunity. "The Supreme Court's confused guidance has led lower courts to adopt differing standards. Different panels of the same circuit have even come to different conclusions on the same set of facts. Samuel Brandao, *Qualified Immunity—Obviousness Standard—Taylor v. Riojas*, 135 Harv. L. Rev. Vol.421, 426 (2021). In 2020, the Supreme Court overturned a grant of qualified immunity based on the obviousness of the constitutional violation. *Id.* In *Taylor*, an inmate sued under § 1983 for the deplorable, unsanitary conditions of his cells over six days and refusal to take him to the bathroom. *Taylor v. Riojas*, 592 U.S. 7, 8 (2020). The Supreme Court overturned the Fifth Circuit's grant of qualified immunity where the Fifth Circuit reasoned the prison officials did not have "fair

warning" that the conditions were unconstitutional. *Id.* The Supreme Court's decision in *Taylor*, however, provides some guidance as to the obviousness of a constitutional violation: a reasonable officer. *See id.*

Certain Circuit panels have reached different conclusions regarding qualified immunity on identical cases. Brandao, 135 Harv. L. Rev. Vol.421, 427 n. 73-77 (citing *Baxter v. Harris* in which one Sixth Circuit Panel affirmed denial of qualified immunity, and a second panel reversing the refusal to grant qualified immunity in the same case). Other Circuits have clearly different standards and holdings. *See id.* (citing Tenth and Eleventh Circuit reaching similar holdings related to clearly obvious that prisoners being exposed to human waste; whereas, the Fifth Circuit found no similar precedent to put officers on notice). The disparity across Circuits is best highlighted by the qualified immunity pattern jury instructions between the Circuits. Notably, the Eleventh Circuit has no pattern jury instructions on qualified immunity. Thus, it is even more difficult to ascertain the standards to meet.

Given the prevalence of mental illness, barricaded subjects, and focus on de-escalation, as well as heightened scrutiny over police involved shootings, it is unreasonable to conclude that the lack of proper training and firearms would not result in constitutional violations. In fact, no reasonable officer could reach that conclusion. *See id.* Specifically, the individual responsible for setting policy and training for an entire law enforcement department, like Mack.

Ultimately, qualified immunity is no longer tenable and should be abolished. Qualified immunity was formed by legal doctrine to protect law enforcement from frivolous lawsuits when acting justifiably. In theory, this doctrine was well-intentioned and logical. In practice, qualified immunity has transformed into an absolute immunity shield that protects against all misconduct, regardless of how unlawful or unconstitutional. In *Pierson v. Ray*, 386 U.S. 547 (1967), 15

clergymen were arrested for breach of the peace. 386 U.S. 547 at 549. The clergymen sued, but officers rebutted "they should not be held liable if they acted in good faith and with probable cause in making an arrest under a state statute not yet held invalid." *Id.* at 551. The Supreme Court agreed and held officers should not be held liable when acting in good faith in the context of constitutional violations. *Id.*

While the Supreme Court developed this framework, it seemed to have omitted a key fact from its analysis:

> The Civil Rights Act of 1871 created a cause of action for violation of federal law by state actors—what we now call Section 1983—and made clear that such a claim would be viable notwithstanding "any such law, statute, ordinance, regulation, custom, or usage of the State to the contrary." For reasons unknown, this critical clause . . . was omitted when the Reviser of the Federal Statutes, who lacked any authority to alter positive law, published the first compilation of federal law in 1874. That error was compounded when the Revised Statutes were collected in the United States Code. But because the common law of immunity for state actors, to the extent any existed, was generally state law immunity, Section 1983's original text conveys congressional intent that immunity defenses should not apply to the newly created civil rights actions. What's more, this reading is confirmed by contemporaneous legislative history and other provisions of the Civil Rights Act of 1871.

Alexander A. Reinert, *Qualified Immunity's Flawed Foundation*, 111 Cal. Law. Rev. 201, 207 (Mar. 2023).

Despite the lack of congressional intent, subsequent decisions and public policy have expanded qualified immunity taking into consideration policy goals—like damages to protect citizens' rights with citizens also bearing the cost of such damages, the need to protect officials who are required to exercise judicial discretion, and related public interest in encouraging the exercise of authority. As noted by the Executive Order, *supra*, there are also serious concerns over the retention and well-being of law enforcement, along with fear of liability discouraging individuals from enlisting to be officers. These policy concerns combined with lack of direction from the Supreme Court and conflicting frameworks adopted by various Circuits (or within

Circuits) have led to an inescapable labyrinth for plaintiffs to navigate. Indeed, the constitutional law surrounding what is "clearly established" and "beyond debate" has stagnated to a halt. When asking the threshold two questions, was constitutional right violated, and was it clearly established, many judges do not even answer in any particular order or simply skip the first question, which creates a "catch 22" situation. *Zadeh v. Robinson*, 928 F.3d 457, 479-80 (5th Cir. 2019) (Willet, J., concurring in part and dissenting in part). In skipping over the first inquiry, constitutional law is not developed and rights are not recognized. *See id.*; *see also Taylor*, 592 U.S. 7 at 8 (admonishing the Fifth Circuit for finding no factually similar circumstances to put officers on notice of violation).

Similarly, many Supreme Court Justices have also repeatedly criticized the unwieldy and impractical nature of the modern qualified immunity—or lack thereof. In *Ziglar v. Abbasi*, Justice Thomas voiced concern that the current elaboration of qualified immunity for executive officials has diverged from any semblance of its common law roots regardless of the precise nature of an officer's duties or character of rights allegedly violated. *Ziglar v. Abbasi*, 582 U.S. 120, 159 (2017) (Thomas, J., concurring in part and concurring in the judgment). Justice Kennedy voiced a similar concern in *Wyatt v. Cole*, 504 U.S. 158, 170 (1992) (Kennedy, J., concurring). Justice Scalia admitted the Court has not even tried to be faithful to common law immunities. *Crawford-El v. Britton*, 523 U.S. 574, 611 (1998) (Scalia, J., joined by Thomas, dissenting) (internal cites omitted). Justice Sotomayor also criticized modern qualified immunity standard's focus on what is "clearly established." *Kisela v. Hughes*, 548 U.S. 100, 118 (2018) (Sotomayor, J., dissenting). It was never the law that to satisfy the "clearly established" prong, there needed to be a factually identical precedent. *Id.* Unfortunately, this is exactly what courts have started to do and it created an absolute shield for law enforcement.

Given the rising criticism of qualified immunity and the increased public scrutiny surrounding law enforcement abuse—it is time for this doctrine to be revisited. Qualified immunity opens the floodgates for reckless behavior and reinforces the idea of shoot first and ask questions later (like what happened here). Applying qualified immunity as a defense perpetuates a long line of cases that signal to law enforcement officers they can violate an individual's constitutional rights without serious repercussions. Under current qualified immunity, it does not matter how egregious and palpably unreasonable the conduct is, the offenders and their superiors go unpunished and the victims have no justice.

## V.    CONCLUSION.

For the foregoing reasons, this Court should re-hear this appeal en banc, and (1) reverse the Panel as to Mack; (2) affirm denial of summary judgment; and (3) remand for a trial on the merits as to both Defendants.

Dated: May 7, 2024                              Respectfully submitted,

By: /s/ Jack Samuel Tenenbaum
Jack Samuel Tenenbaum
Attorney for Appellee/Plaintiff
Bluhm Legal Clinic
Northwestern Pritzker School of Law
Bluhm Legal Clinic
375 E. Chicago Avenue
Chicago, Illinois 60611
(312) 503-4808
s-tenenbaum@law.northwestern.edu

## CERTIFICATE OF COMPLIANCE WITH APPELLATE RULE

I hereby certify that this brief, filed on behalf of Plaintiff/Appellee Donna Chisesi, as Independent Administratrix of the Estate of Jonathan Victor, Deceased, complies with Rule 35(b)(2). This brief contains 3,818 words, excluding certifications.

Dated: May 7, 2024                    By: /s/ Jack Samuel Tenenbaum
                                          Jack Samuel Tenenbaum
                                          Attorney for Appellee/Plaintiff
                                          Bluhm Legal Clinic
                                          Northwestern Pritzker School of Law
                                          Bluhm Legal Clinic
                                          375 E. Chicago Avenue
                                          Chicago, Illinois 60611
                                          (312) 503-4808
                                          s-tenenbaum@law.northwestern.edu

**CERTIFICATE OF SERVICE**

I hereby certify that on this 7th day of May, 2024, I electronically filed the foregoing with the Clerk of the Eleventh Circuit Court of Appeals using the CM/ECF system which will send notification of such filing to the following, as well as personally emailing the filings too:

> J. Randall McNeill
> Fred L. Clements, Jr.
> WEBB MCNEILL WALKER PC
> 8475 Halcyon Point Drive
> P.O. Box 240909
> Montgomery, Alabama 36124
> rmcneill@wmwfirm.com
> fclements@mwmfirm.com

> By: /s/ Jack Samuel Tenenbaum
> Jack Samuel Tenenbaum
> Attorney for Appellee/Plaintiff
> Bluhm Legal Clinic
> Northwestern Pritzker School of Law
> Bluhm Legal Clinic
> 375 E. Chicago Avenue
> Chicago, Illinois 60611
> (312) 503-4808
> s-tenenbaum@law.northwestern.edu

# EXHIBIT 1

[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 21-11700

_____

DONNA CHISESI,
As Independent Administratrix of the Estate of Jonathon
Victor, Deceased,

Plaintiff-Appellee,

*versus*

MATTHEW HUNADY,
Individually and in his official capacity,
HUEY HOSS MACK,

Defendants-Appellants,

BALDWIN COUNTY SHERIFF'S OFFICE,

Defendant.

_____

Appeal from the United States District Court
for the Southern District of Alabama
D.C. Docket No. 1:19-cv-00221-C

_____

Before LAGOA and BRASHER, Circuit Judges, and BOULEE,* District
Judge.

PER CURIAM:

      This case concerns the shooting death of Jonathan Victor.
Officer Matthew Hunady, a deputy with the Baldwin County Sher-
iff's Office, responded to the scene of a single-car accident where
the driver—Victor—was behaving erratically.  Following a ten-mi-
nute stand-off, Officer Hunady shot and killed Victor.  Donna
Chisesi, the administratrix of Victor's estate, filed suit under 42
U.S.C. § 1983, bringing claims for excessive force and wrongful
death against Officer Hunady and for supervisory liability on a fail-
ure to train theory against Baldwin County Sheriff Huey Hoss
Mack.  The district court denied Officer Hunady and Sheriff Mack's
motion for summary judgment on qualified immunity grounds,
and this interlocutory appeal followed.  After oral argument and

_____

* Honorable J. P. Boulee, United States District Judge for the Northern District
of Georgia, sitting by designation.

careful consideration, we dismiss Officer Hunady's appeal for lack of jurisdiction and reverse the district court's denial of qualified immunity with respect to Sheriff Mack.

## I.    FACTUAL BACKGROUND

The outcome of cases involving qualified immunity "depends very much on the facts of each case." *Brosseau v. Haugen*, 543 U.S. 194, 201 (2007). Notably, "[t]he 'facts' at the summary judgment stage are not necessarily the true, historical facts" because "they may not be what a jury at trial would, or will, determine to be the facts." *Cantu v. City of Dothan*, 974 F.3d 1217, 1222 (11th Cir. 2020). "Instead, the facts at this stage are what a reasonable jury could find from the evidence viewed in the light most favorable to the non-moving party . . . ." *Id.* Accordingly, we view the record in the most pro-Chisesi light possible while staying within the realm of reason.

On May 12, 2017, Victor was involved in a single-vehicle accident on Interstate 10 in Alabama. Volunteer firefighters and paramedics arrived first to assist Victor. When firefighter Michael Tobias approached Victor, he refused to roll down his window. Through the window, Tobias noticed that Victor's hands were wrapped in cloth and that they appeared to be bleeding. Tobias also noticed that Victor was acting strangely and aggressively. As a result, Tobias backed away from Victor's vehicle and called the Baldwin County Sheriff's Office for assistance.

Meanwhile, a paramedic also approached Victor's vehicle. Victor shouted at the paramedic to leave. Significantly, the

paramedic believed that he saw a weapon in Victor's lap. Consequently, the paramedic and all others on scene retreated, took cover behind a parked vehicle, and waited for law enforcement to arrive.

Upon speaking with the 911 operator, the Baldwin County Sheriff's Office dispatched to responding officers the following information about Victor: (1) he was approximately 30 years old and had barricaded himself in his vehicle; (2) first responders had seen a weapon on his lap[1] and were backing away from him; (3) he was covered in blood and had his arm wrapped; (4) he had jumped in the back of the vehicle and grabbed something, but they could not tell what it was; (5) he was not compliant with instructions; and (6) he was talking to himself.

Officer Hunady self-dispatched to the scene of Victor's single-vehicle accident. Officer Hunady is a seasoned law enforcement officer with approximately twelve years of experience. His initial law enforcement training was twenty-five weeks long, and the Baldwin County Sheriff's Office conducts at least four training sessions per year for active officers. The Baldwin County Sheriff's Office, however, does not offer specific training programs in these three areas: (1) crisis intervention, (2) de-escalation techniques, and

---

[1] Although the dispatcher for the Baldwin County Sheriff's Office relayed to responding officers that the first responders saw a weapon on Victor's lap, the 911 operator had only told the dispatcher that they *thought* they saw a weapon on Victor's lap.

(3) engaging with persons who are suicidal or otherwise under acute mental distress.

Upon Officer Hunady's arrival, first responders confirmed to Officer Hunady at least some of the information that he had initially received over dispatch. More specifically, one first responder told Officer Hunady that Victor was wide-eyed, acting irrationally, talking to himself, and possibly armed.

With rifle in hand and aimed at Victor's vehicle, Officer Hunady positioned himself behind a firetruck that was about fifteen to twenty yards away. For roughly ten minutes, Officer Hunady shouted to Victor that he was with the Sheriff's Office, that he needed Victor to come out of the vehicle with his hands up, and that the officers were there to help him. Rather than comply with these instructions, Victor moved around in his vehicle. During this time, Officer Hunady could not determine what Victor was doing.

After ten minutes, Victor stepped out of the passenger side of his vehicle — the side closest to the officers. The dispute central to this case arose here. When Victor emerged from the vehicle, he was holding his arm at an unusual angle with something wrapped around his hand. Officer Hunady says that Victor took an aggressive, shooter's-type stance, with his arms punched out in front of his chest as if he were aiming a concealed object at the officers. Because of Victor's posture, Officer Hunady says he believed that Victor was armed with a weapon. Chisesi contests Officer Hunady's recollection and says that Victor never took a shooter's-type stance or punched his arms out as if he were holding a gun. Instead, based

on the video, Chisesi says that Victor was holding his arm because it was injured, and that Victor's arm was wrapped in cloth because it was bleeding. The district court, upon reviewing video footage of the incident, concluded that a reasonable jury could agree with either party's version of events.

Approximately thirty to forty seconds after exiting his vehicle, Victor began slowly to walk up an embankment toward Officer Hunady and other officers, who were behind a firetruck on the interstate. Officer Hunady can be heard on video shouting these commands while Victor was moving toward the officers:

> Drop what's in your hands. Drop what's in your hands. Drop it. Drop it. Drop it right now and put your hands up. We're just here to help you, man. We're just here to help you. Drop whatever you got in your hand, dude. Drop it. Drop it. Put your hands up, man. We're just here to help you. Put it down, dude. Put it down. Don't advance. Do not advance. Do not advance. Stand right there. Man, don't f****** do it. Put it down, put it down. Put it down right now. Put it down. Put it down. Put it down. Put it down.

Victor can at one point be heard responding, "No, you drop it." After the last "put it down," Officer Hunady fired four shots at Victor, killing him. Later investigation revealed that Victor was not armed—he was holding a fanny pack that he wrapped with a rain jacket.

We do not know from the videos or the rest of the record exactly how Victor reacted, physically, to Officer Hunady's commands. The videos do not answer that question because, as he began to advance toward the officers, the view of the cameras that recorded much of the incident became blocked by the firetruck behind which the officers were hiding. Testimony does not resolve the issue, either. Officer Hunady says that, in the moments leading up to the shooting, Victor never put down what was in his hands, never stopped advancing, and never put his hands up. An eyewitness testified, however, that Victor was "just standing there" when Officer Hunady opened fire.

## II.    PROCEDURAL HISTORY

As the administratrix of Victor's estate, Chisesi filed a 42 U.S.C. § 1983 lawsuit against Officer Hunady and Sheriff Mack. Chisesi alleged excessive force and wrongful death in violation of the Fourth Amendment against Officer Hunady. As to Sheriff Mack, Chisesi alleged failure to properly train and supervise deputy sheriffs in responding to injured individuals who display signs of an altered state of mind.[2]

Officer Hunady and Sheriff Mack moved for summary judgment on qualified immunity grounds. The district court denied their motions.

---

[2] Chisesi also brought a claim under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), against Sheriff Mack. That claim is not before us in the instant appeal.

In analyzing whether Officer Hunady was entitled to quali-
fied immunity, the district court discussed whether he violated Vic-
tor's constitutional right to be free from excessive force and
whether that right was clearly established at the time of the shoot-
ing.  As to the first element, the district court concluded that a jury
could find that Officer Hunady's use of deadly force was unconsti-
tutional based, in large part, on its interpretation of the video evi-
dence of the shooting.  Specifically, the district court concluded
that a reasonable jury could view the video recordings of the shoot-
ing and find that Victor was neither aggressive nor threatening to
Officer Hunady or to others on scene.  At bottom, the district court
held that a reasonable jury could find that Officer Hunady violated
the Fourth Amendment by unreasonably using deadly force in a
situation that posed no immediate threat.  As to the second ele-
ment—whether the constitutional violation was clearly estab-
lished—the district court concluded that Chisesi met her burden
because, if Victor was not threatening, "the standard for excessive
force is clearly established" and Officer Hunady's conduct was ob-
viously unconstitutional.

Likewise, the district court determined that Sheriff Mack
was not entitled to immunity on the failure to train claim.  In reach-
ing this conclusion, the district court concluded that Sheriff Mack
failed to train his deputies in dealing with barricaded subjects, sub-
jects in mental health crises, and the use of de-escalation tactics and
strategies.  Even though Chisesi did not show a pattern of similar
constitutional violations that would put Sheriff Mack on notice that
his training programs were deficient, the district court still

determined that qualified immunity was unavailable to Sheriff Mack because the shooting that occurred here "is the kind of recurring situation presenting an obvious, highly predictable potential for violation that can trigger liability for failure to train, even in the absence of a pattern of violations." The district court did not analyze the clearly established prong as it applied to the claim asserted against Sheriff Mack.

Officer Hunady and Sheriff Mack appealed the district court's denial of their motions for summary judgment.

## III.    THE APPELLATE JURISDICTION ISSUE

Before proceeding further with this appeal, we must first determine whether we have appellate jurisdiction. *See Patel v. City of Madison*, 959 F.3d 1330, 1337 (11th Cir. 2020) (the Court must *sua sponte* examine whether appellate jurisdiction exists). As a general rule, only orders that dispose of all claims against all parties are appealable. *Id.* Exceptions exist, however. Indeed, we often have appellate jurisdiction to review the denial of summary judgment on qualified immunity grounds, depending on which issues are part of the appeal. *Cottrell v. Caldwell*, 85 F.3d 1480, 1484 (11th Cir. 1996). More specifically,

> when legal questions of qualified immunity are raised—either to determine whether any constitutional right was violated or whether the violation of that right was clearly established—interlocutory appellate jurisdiction exists. But if the only question

before the appellate court is a factual one, review
must wait for a later time.

*Hall v. Flournoy*, 975 F.3d 1269, 1276 (11th Cir. 2020).

In summary judgment parlance, *Hall* means that we have
appellate jurisdiction over appeals that contest whether a factual
dispute is "material"—i.e., whether the resolution of that dispute
will affect the ultimate legal conclusion of whether a defendant is
liable.  *See* Fed. R. Civ. P. 56(a).  But we have no jurisdiction over
appeals that contest only whether a factual dispute is "genuine"—
i.e., whether a reasonable jury could decide the factual question in
favor of the non-moving party.  *See id.*  So when the parties are
fighting about the genuineness of a factual dispute—but do not
contest that factual dispute's materiality to the outcome of the
case—we lack appellate jurisdiction over the denial of a qualified-
immunity summary judgment motion.  *Hall*, 975 F.3d at 1276.

Applying the *Hall* standard to this appeal, we conclude (1)
that we lack appellate jurisdiction over Officer Hunady's appeal be-
cause he contests only whether a reasonable jury could credit
Chisesi's view of the evidence, and (2) that appellate jurisdiction
exists for Sheriff Mack's appeal because his appeal raises legal ques-
tions.

We will start with Officer Hunady's appeal.  There is a fac-
tual dispute as to whether Victor displayed aggressive, shooter's-
type behavior after exiting the vehicle and advancing toward the
officers.  Chisesi says, and the district court agreed, that a reasona-
ble jury could agree with her that Victor did not behave in a

threatening or aggressive manner. The district court thus con-cluded that the factual dispute was genuine. The district court then concluded that the dispute was material because a jury agreeing with Chisesi's version of events could find that Officer Hunady's shooting of Victor was unjustified and in violation of clearly estab-lished law.

Officer Hunady contests only the district court's conclusion that a jury could agree with Chisesi's account of the incident. Of-ficer Hunady's opening brief can be condensed into the following argument: The district court should be reversed because it "erro-neously concluded that a" reasonable jury could disagree with Of-ficer Hunady's contentions that "Victor appeared to pose an immi-nent threat of serious physical harm," or that it was at least "rea-sonable for him to believe that Victor was [a] danger[] to him," be-cause "Victor stood in an aggressive shooting stance." Critically, Officer Hunady at no point argues on appeal that he did not violate clearly established law even if Victor were not threatening the of-ficers. He thus concedes, at least at this stage, that the outcome of the appeal turns on whether a jury could find as a matter of fact that Victor did not behave in a threatening and aggressive manner. Under Officer Hunady's logic, if a jury finds that Victor was threat-ening the officers, then there is qualified immunity; if the jury finds that Victor was not threatening the officers, then there is not. Ac-cordingly, "all we are left with is the factual review of what hap-pened—was [Chisesi's] version of events right, or was [Officer Hunady's]?" *Hall*, 975 F.3d at 1277. We lack jurisdiction over that kind of appeal.

Officer Hunady says his appeal should be treated differently because most of the incident was captured on video. We disagree. The Supreme Court has held that, when a video "utterly discredit[s]" the nonmovant's version of events, a court may rely on that video to resolve factual disputes in a movant's favor. *Scott v. Harris*, 550 U.S. 372, 380 (2007). In *Scott*, the lower courts ignored a video in resolving a motion, which presented a legal question for review on appeal i.e., how should courts evaluate video evidence. But the district court here reviewed the video and concluded that the video does not "utterly discredit" Chisesi's contention that Victor was not threatening Officer Hunady and the other officers. In this posture—with Officer Hunady presenting no legal issues for us to resolve—we cannot review that conclusion by the district court. *See Hall*, 975 F.3d at 1278.

In fact, we recently dismissed a qualified immunity appeal involving a video in nearly identical circumstances to those presented by Officer Hunady's appeal. *See English v. City of Gainesville*, 75 F.4th 1151 (11th Cir. 2023). In *English*, police officers appealed a denial of qualified immunity, arguing that their actions were justified because a suspect "posed an immediate threat of serious physical harm." *Id*. at 1156. Whether the suspect had posed a threat was a disputed fact. *Id*. The district court reviewed videos of the incident and concluded that a reasonable jury could watch the videos and agree with either side. *Id*. We said that "this is the type of ruling we lack jurisdiction to review." *Id*. There is no meaningful difference between the appeal in *English* and Officer Hunady's appeal. As in *English*, the only purported error Officer Hunady asks

us to review—whether the district court correctly interpreted the video—is a factual one. Under *English*, and entirely consistent with *Scott*, we lack jurisdiction to make that call at this stage of the litigation.

Sheriff Mack's appeal is a different (and simpler) story. The facts underlying that claim are not in dispute. Instead, the centerpiece of Sheriff Mack's appeal is that the district court reached the wrong legal conclusion, even if all of Chisesi's factual contentions are treated as true. Specifically, Sheriff Mack argues that he cannot be held liable for his failure to train Officer Hunady, even if Officer Hunady violated Victor's clearly established constitutional rights. Sheriff Mack's argument is thus precisely the type of argument appropriate to invoke our interlocutory jurisdiction. Accordingly, we will review Sheriff Mack's appeal.

We note that there is no significant overlap in the facts underlying each party's appeal. Whether a reasonable jury could conclude that Victor was acting in a threatening and aggressive manner after the car accident says nothing about whether Sheriff Mack sufficiently trained his officers to de-escalate encounters with suspects experiencing mental health crises. So we need not address whether we would have jurisdiction over Officer Hunady's appeal if it relied on fact disputes that we would need to address as part of answering Sheriff Mack's legal arguments.

## IV.    STANDARD OF REVIEW

Now that we are satisfied that we have jurisdiction over Sheriff Mack's interlocutory appeal, we review *de novo* the denial of

his motion for summary judgment. *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1247 (11th Cir. 2013). "When considering a motion for summary judgment, including one asserting qualified immunity, 'courts must construe the facts and draw all inferences in the light most favorable to the nonmoving party and when conflicts arise between the facts evidenced by the parties, [courts must] credit the nonmoving party's version.'" *Id.* at 1252 (quoting *Davis v. Williams*, 451 F.3d 759, 763 (11th Cir. 2006)). Ultimately, summary judgment is appropriate if the evidence before the court shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

## V.　ANALYSIS

We begin our analysis with a review of the law on qualified immunity. This doctrine "protects public officers 'from undue interference with their duties and from potentially disabling threats of liability.'" *Paez v. Mulvey*, 915 F.3d 1276, 1284 (11th Cir. 2019) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 806 (1982)). Indeed, "[t]he qualified immunity defense shields 'government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Corbitt v. Vickers*, 929 F.3d 1304, 1311 (11th Cir. 2019) (quoting *Harlow*, 457 U.S. at 818). Qualified immunity protects "'all but the plainly incompetent or those who knowingly

violate the law.'" *Id.* (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

"[T]o establish qualified immunity, [a law enforcement officer] first must show that [he] was acting within the scope of [his] discretionary authority at the time of the alleged misconduct." *Paez*, 915 F.3d at 1284. After the initial showing is made,[3] "the burden shifts to the plaintiff to show that qualified immunity is not appropriate." *Id.* The plaintiff must then show two things: (1) that the law enforcement officer violated a constitutional right and (2) that this right was clearly established at the time of the alleged violation. *Id.* Significantly, an officer loses qualified immunity only if both elements of the test are satisfied. *Brown v. City of Huntsville*, 608 F.3d 724, 734 (11th Cir. 2010).

Turning to Sheriff Mack's appeal, the district court determined that Sheriff Mack was not entitled to qualified immunity on the failure to train claim. Even though Chisesi failed to show a pattern of similar constitutional violations, the district court determined that such evidence was unnecessary, reasoning that this was the kind of recurring situation that presents an obvious, highly predictable potential for a constitutional violation. We disagree.

Chisesi contends that Sheriff Mack is liable under § 1983 because he failed to train the deputies on barricaded subjects, subjects experiencing mental health crises, and de-escalation tactics and

---

[3] Here, it is undisputed that Officer Hunady and Sheriff Mack were acting within their discretionary authority.

strategies. As an introductory matter, it is important to note that a supervisor's "'culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train.'" *Keith v. DeKalb Cnty.*, 749 F.3d 1034, 1053 (11th Cir. 2014) (quoting *Connick v. Thompson*, 563 U.S. 51, 61 (2011)).

A supervisor can be held liable for failure to train under § 1983 "'only where the failure to train amounts to deliberate indifference to the rights of persons with whom the [officers] come into contact.'" *Id.* at 1052 (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)). Deliberate indifference is an exacting standard, requiring proof that a supervisor "disregarded a known or obvious consequence of his action." *Connick*, 563 U.S. at 61. This means that a plaintiff alleging a constitutional violation "must demonstrate that the supervisor had 'actual or constructive notice that a particular omission in their training program causes [his or her] employees to violate citizen's constitutional rights,' and that armed with that knowledge the supervisor chose to retain the training program." *Keith*, 749 F.3d at 1052.

A supervisor may be put on actual or constructive notice of deficient training in two ways. Ordinarily, a plaintiff must show "'[a] pattern of similar constitutional violations by untrained employees.'" *Id.* at 1053 (alteration in original) (quoting *Connick*, 563 U.S. at 62). Alternatively, a plaintiff may show actual or constructive notice "without evidence of prior incidents, if the likelihood for constitutional violation is so high that the need for training would be obvious." *Lewis*, 561 F.3d at 1293. But this second

option—using a single incident as the basis for liability—is available in only a "narrow range of circumstances." *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 409 (1997). The Supreme Court hypothesized that a supervisor could be liable without a prior pattern of constitutional violations if, for example, he armed his police force with firearms and deployed the police—without any training—into the public to capture fleeing felons. *Connick*, 563 U.S. at 63–64 (citing *City of Canton*, 489 U.S. at 390 n.10).

Moreover, a single incident is unlikely to give rise to liability for failure to train where the underlying practice "does not carry a high probability for constitutional violations" or where its omission from the training program at issue is not "'glaring.'" *Lewis*, 561 F.3d at 1293 (quoting *Brown*, 520 U.S. at 410). So liability on this basis is rare.

In this case, the § 1983 claim asserted against Sheriff Mack rests solely on a single incident—the shooting of Victor—rather than a pattern of unconstitutional conduct. Even if Officer Hunady committed a constitutional violation, the "narrow circumstances" that justify imposing liability on Sheriff Mack for failure to train on the basis of a single incident are not present here. Chisesi presented evidence that from 2015 to 2018, there were at least 1,000 officer-involved shootings in the United States where the subject appeared to be in a mental health crisis. Although this evidence shows the possibility of recurring situations involving those suffering mental health crises, the evidence is far more equivocal on whether there

was an obvious potential for the violation of constitutional rights and an obvious need for more or different training.

While certainly important training topics—engaging with mentally ill individuals, handling barricaded subjects, and performing de-escalation techniques—the failure to train officers in those areas does not "carry a high probability for constitutional violations in the manner intended by the 'so obvious' notice that would open the door to [supervisor] liability." *Id.* Moreover, we cannot say that Sheriff Mack knew to a moral certainty that constitutional violations would result from declining to further train his deputies on engaging with individuals experiencing mental health crises. Thus, Sheriff Mack's failure to train sheriff deputies in these areas falls outside the limited circumstances that the Supreme Court has hypothesized could give rise to single-incident liability for failure to train. Ultimately, we conclude that Sheriff Mack is entitled to summary judgment because Chisesi failed to demonstrate that Sheriff Mack had actual or constructive notice that the particular omissions in the training program were likely to result in constitutional violations.

## VI.    CONCLUSION

For the reasons stated above, we **DISMISS** Officer Hunady's appeal for lack of jurisdiction. We **REVERSE** the district court's denial of summary judgment as to Sheriff Mack.

**DISMISSED IN PART, REVERSED IN PART, AND REMANDED.**